**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARAH GOETZE, *on behalf of herself and all others similarly situated*, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| MARIST COLLEGE, | |
| Defendant. | |

Plaintiff Sarah Goetze ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against Defendant Marist College ("Marist" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2.      Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities and experiences through an on-campus, in-person educational experience.

3.      Marist primarily offers students an in-person educational experience featuring traditional, face-to-face lecture and laboratory courses, and offers a limited selection of courses and degree programs in hybrid or online-only formats.

4.      Plaintiff, a graduate student during the Spring 2020 semester, paid tuition and fees to enroll in Marist's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the Spring 2020 semester.

5.      Plaintiff's paid-for experience was cut short midway through the Spring 2020 semester, when that in-person educational experience was taken away from Plaintiff and other students at Marist.

6.      In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Marist, like many other colleges and universities, transitioned to remote online-only education, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7.      As a result, all on-campus education, services, and amenities were no longer available to Marist students for the remainder of the Spring 2020 semester.

8.      Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, Marist refused to provide a prorated refund of tuition tied to its on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.

9.      Accordingly, Marist's students lost the benefits of the bargain for services and the experience they paid for but could no longer access or use following the school's transition to remote learning in March 2020.

10.      By not giving prorated refunds for tuition charged for on-campus education and services not provided, Marist breached its contracts with its students or was otherwise unjustly enriched.

11.      It cannot be disputed that the circumstances underlying this legal action are

2

unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12.     It is unfair and unlawful for Marist to retain tuition for campus-based in-person education and services not being provided and to pass the financial losses on to its students.

13.     Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Marist's decision to retain the tuition, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such for the entire duration of the Spring 2020 semester.

14.     Plaintiff brings this class action for damages and restitution resulting from Marist's retention of the tuition paid by Plaintiff and the other putative Class members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the partial prorated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## PARTIES

15.     Plaintiff, Sarah Goetze, is an adult, who at all relevant times, is a resident and citizen of the State of New York. She paid tuition and fees for the Spring 2020 semester. Halfway through the Spring 2020 semester, Plaintiff was forced to take her classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which she paid.

16.     Plaintiff was a graduate student enrolled at Marist for the Spring 2020 semester, which was scheduled to run from approximately January 21, 2020 to May 15, 2020. Plaintiff did not have access to the campus after mid-March 2020 because the campus was closed due to the COVID-19 pandemic. Plaintiff paid tuition and fees for an in-person educational experience during

the Spring 2020 semester, the benefits of which she lost because Marist closed the campus and cut off access to on-campus services, facilities, and extracurricular activities.

17.     Defendant, Marist, is a private university founded in 1929. Marist offers almost 50 undergraduate degrees and over a dozen graduate degrees and programs. Defendant's programs enroll students from nearly all fifty states, the District of Columbia, and several U.S. territories and foreign countries. Marist operates its main campus in Poughkeepsie, Dutchess County, New York. Defendant is a citizen of New York.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19.     This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District and soliciting students residing in this District to attend its institution.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## **FACTUAL ALLEGATIONS**.

21.     Prior to the COVID-19 pandemic, Marist had a longstanding tradition of offering most of its courses in face-to-face classroom settings on campus. In accordance with this prior course of conduct, Marist scheduled the majority of its Spring 2020 courses to be in-person and on-campus.

22.     During registration for Spring 2020 courses, Marist's online course enrollment system offered students the opportunity to search for classes by schedule type: Lecture, Hybrid Lecture/Online, or Online Class.[1]  Even if students did not search specifically for online courses, Marist's course enrollment system informed students of the instructional mode (in-person or online) and physical locations of their proposed classes before students finalized their registration. Therefore, when enrolling in classes for the Spring 2020 semester, Marist students made informed choices about whether to spend their tuition dollars on in-person or online modes of course delivery.

23.     To enroll in classes, Marist students are required to pay tuition and some form of mandatory fees. The Spring 2020 semester was scheduled to commence on or about January 21, 2020, and end on or around May 15, 2020.[2]

---

[1] *See Browse Classes*, Marist College, https://ssb1-reg.banner.marist.edu/StudentRegistrationSsb/ssb/term/termSelection?mode=search (choose "Spring 2020 (View Only)" and "Continue," then select "Advanced Search," then select "Schedule Type." (last visited Oct. 16, 2023).
[2]     *Marist     College     2019-2020     Graduate     Programs*     ("Graduate     Catalog"), https://www.marist.edu/documents/86200/366226/2019-2020+Graduate+Catalog.pdf/3c9153b4-9103-e324-ad8b-668937fc29f9?t=1675869296005 at 6-7.

24.     Tuition for the Spring 2020 semester was $20,900 for full-time undergraduate students in traditional on-campus degree programs.[3]  Tuition ranged between $850 and $1,140 per credit hour for graduate students, depending on degree program.[4]

25.     Marist recognizes that traditional, face-to-face classroom instruction and online remote learning are different educational experiences that appeal to different student preferences. In some cases, Marist charges significantly higher tuition for face-to-face instruction than for comparable online remote learning.

26.     For example, Marist offers two undergraduate programs fully online, and emphasizes that the online programs are "no different in academic rigor or quality.  The admission requirements are the same, the faculty are the same, and students earn the same bachelor's degree. The only difference is the format in which the courses are delivered."[5]  While Marist charged an average of $1,306 to $1,742 per credit for undergraduates enrolled in face-to-face programs, Marist offered its fully online undergraduate programs for as little as $730 per credit.[6]  In other words, Marist students can enroll in fully online programs for roughly *half* the cost of face-to-face courses, even though Marist purports that online programs are of the same rigor and quality and taught by the same faculty as its in-person offerings.

---

[3]   *Marist College 2019-2020 Undergraduate Programs* ("Undergraduate Catalog"), https://www.marist.edu/documents/86200/366226/MaristUndergrad-2019.pdf/f0b2fe8e-c37b-94ac-6eaf-ea09a22b99bb?t=1675881792939 at 308.
[4]  Graduate Catalog at 22.
[5]   *School of Professional Programs*, Marist College, https://web.archive.org/web/20200806185008/https://www.marist.edu/professional-programs/prof-studies (captured Aug. 6, 2020).
[6]  *Undergraduate Catalog, supra* note 3. *See also id.* at 27 ("Full-time tuition charges cover between 12 and 16 credits."); *School of Professional Programs*, Marist College, https://web.archive.org/web/20190730185952/https://www.marist.edu/professional-programs/programs/management-studies (captured Jul. 30, 2019).

27.     Similarly, Marist offers courses during winter break, taught exclusively in online distance learning formats. These courses are taught by regular Marist faculty but cost only $795 per credit—again, roughly *half* of the cost of face-to-face courses.[7]

28.     Though Marist offers some courses and programs online, it customarily advises students considering enrolling in online remote courses that distance learning is a different educational experience from face-to-face instruction.

29.     For example, Marist takes care to explain "How Online Courses Work," in catalog descriptions of fully online degree programs, emphasizing that "[t]here is no on-campus requirement for students completing the program fully online, nor are all students expected to be online at the same time."[8]  Marist offers the Masters of Arts in Educational Psychology on-ground or as a hybrid program, and gives an express warning about the hybrid program: "Since this is a very intensive program in a hybrid model, students must have good self-management, time and task management, and organizational skills."[9] Marist explains that students in its Masters of Public Administration graduate students "may pursue the MPA program in a hybrid (face-to-face and online sessions), fully online, or through a combination of both—*whatever best suits their needs*."[10]   And Marist "strongly encourages" students enrolling an online winter course to complete a learning management system (LMS) orientation to prepare before the course begins.[11]

30.     Marist uses its marketing materials, course catalog, and other bulletins to solicit students for its in-person, on-campus educational programs.

---

[7] *Winter Session*, Marist College, https://www.marist.edu/winter-session (last visited Oct. 16, 2023).
[8] Graduate Catalog at 38, 56.
[9] Graduate Catalog at 116-118.
[10] Graduate Catalog at 55 (emphasis added).
[11] *Winter Session*, *supra* note 7.

31.     Marist promotes "Excellence in Education" as a core institutional ideal, describing that it "achieves its ideal of excellence in undergraduate, graduate, and professional education by actively engaging each student through exemplary teaching and distinctive learning opportunities."[12]

32.     Marist describes in-person interaction with faculty as a core benefit of enrollment at the university. Marist advertises that "[w]hat makes Marist so special" is that it "demonstrate[s] excellence in education through an emphasis on quality teaching in a small classroom setting."[13] Marist claims that "[q]uality teaching in small classes is also key – when professors really know their students, this leads to mentorship, joint research, and intellectual guidance."[14]

33.     Marist also emphasizes the importance of extracurricular student organizations and activities as part of its in-person educational experience. Marist boasts that:

> The College offers an array of clubs, organizations, activities, and services that support the diverse needs of our community members, and we encourage you to expand your horizons. As a member of the Marist community, you'll have the opportunity to take part in the annual Diwali and Mon Afrique celebrations, a host of spirituality groups and community service activities, Greek life, the New York City Pride March, dozens of student clubs and organizations, ROTC, and many other examples of meaningful engagement with the world around you.[15]

34.     Marist highlights its extensive on-campus academic facilities, many recently built or renovated, as a significant benefit in-person enrollment, including:

---

[12] Undergraduate Catalog at 8, Graduate Catalog at 9.
[13] *The Marist Experience*, Marist College, https://web.archive.org/web/20190418184113/ https://www.marist.edu/about/the-marist-experience (captured Apr. 18, 2019).
[14] *Academics*, Marist College, https://web.archive.org/web/20190418184023/ https://www.marist.edu/academics (captured Apr. 18, 2019).
[15] *The Marist Community*, Marist College, https://web.archive.org/web/20190418184107/ https://www.marist.edu/student-life/marist-community (captured Apr. 18, 2019).

a.     The New Science and Allied Health Building, completed in 2016 and "designed by . . . one of the world's leading architectural firms;"[16]

b.     The Student Center, renovated in spring 2014 at the cost of $33 million, featuring a new 24,000-square-foot academic building along with "a grand dining hall with a three-story cathedral ceiling . . . a health and wellness center, student lounges, student government offices, space for club activities, a yoga and dance studio, a post office, and a bookstore;"[17]

c.     The Hancock Center, a computer science building completed in 2011 that "dedicates space to classrooms, seminar rooms, computer labs . . . a café, student lounge, and patio overlooking the Hudson River;"[18]

d.     The James A. Cannavino Library, with "a large reading room overlooking the Hudson River, . . . [a]cademic student support services, [and] a number of collaborative student study rooms;"[19]

e.     The "newly renovated" Lowell Thomas Communications Center, which "houses classrooms, TV studios, video editing labs, computer labs, faculty offices, and collaborative work space for the School of Communication and the Arts;"[20]

f.     Donnelly Hall, which houses "state-of-the-art chemistry labs and a two-story greenhouse; a computer center; classrooms; lecture halls; a Fashion

---

[16] Undergraduate Catalog at 10, Graduate Catalog at 15.
[17] Undergraduate Catalog at 10, Graduate Catalog at 15.
[18] Undergraduate Catalog at 10, Graduate Catalog at 15-16.
[19] Undergraduate Catalog at 10, Graduate Catalog at 16.
[20] Undergraduate Catalog at 10, Graduate Catalog at 16.

Program complex; and a variety of student services and administrative offices;"[21] and

g.    The Steel Plant Studios and Gallery, "an expansive space for studio art courses and a digital media laboratory as well as a gallery regularly hosting exhibits of work by contemporary regional artists."[22]

35.    Moreover, Marist promotes its location as a central component of its identity and a compelling reason for students to decide to attend:

"Marist College is located in the middle of the beautiful and historic Hudson River Valley, just 75 miles from metropolitan New York City. More than three hundred years of New York history can be found in Dutchess and the surrounding counties, and it is all offered to area visitors, accompanied by breathtaking views. Bounded on one side by the majestic Hudson River, the College sits just minutes from the homes of some of this country's most influential people. A must-see on any visitor's schedule is the home and museum of Franklin Delano Roosevelt, and Val-Kill, Eleanor Roosevelt's retreat, both just a short distance from Marist."[23]

36.    Plaintiff and members of the Class paid their tuition in the Spring 2020 semester to enjoy everything Marist offered them, including on-campus resources, campus community, and in-person education throughout the entire Spring 2020 semester.

37.    When enrolling in classes for the Spring 2020 semester, Plaintiff and members of the Class chose to enroll in classes offered in-person, to obtain the benefits outlined above.

38.    Despite Plaintiff and Class members paying Spring 2020 semester tuition to attend Marist for an in-person and on-campus educational experience, Marist failed to provide the promised in-person education for the duration of the entire Spring 2020 semester, instead providing only online instruction for approximately half of the Spring 2020 semester.

---

[21] Undergraduate Catalog at 11, Graduate Catalog at 17.
[22] Undergraduate Catalog at 11, Graduate Catalog at 17.
[23] *Our Hudson Valley Campus*, Marist College, https://web.archive.org/web/20190418184025/https://www.marist.edu/about/location (captured Apr. 18, 2019).

A.     **In Response to COVID-19, Marist Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes.**

39.     On March 11, 2020, the Wednesday before its scheduled spring break, Marist extended its spring break to two weeks by cancelling all in-person classes scheduled for the week of March 23 to March 27, 2020.[24]  Five days later, on March 16, 2020, Marist determined that all classes between March 30, 2020 and the end of Spring 2020 semester would be offered in online remote learning formats only.[25]

40.     By March 17, 2020, Marist had closed campus except for essential employees, and canceled all athletic activities and meetings and events—including those hosted by external groups—"until further notice." These cancellations extended through the end of Spring 2020 semester.[26]  At around the same time, Marist closed residence halls, allowing only limited exceptions on a case-by-case basis, such as for international students who could not return to their home countries.[27]

41.     On April 2, 2020, Marist postponed its Spring 2020 commencement ceremonies indefinitely.[28]

---

[24] *Coronavirus Message from the President to Students*, Marist College (Mar. 11, 2020), https://web.archive.org/web/20200920181622/https://www.marist.edu/-/coronavirus-message-from-the-president-to-students-march-11-2020 (captured Sep. 20, 2020).

[25] *Coronavirus message from President Murray*, Marist College (Mar. 16, 2020), https://web.archive.org/web/20200404040121/https://www.marist.edu/-/coronavirus-message-president-murray-3-16-2020 (captured Apr. 4, 2020).

[26] *Coronavirus Updates and Resources*, Marist College, https://web.archive.org/web/20200330143242/https://www.marist.edu/coronavirus-updates (captured Mar. 30, 2020).

[27] *Coronavirus message, supra* note 28.

[28] *Message to the Class of 2020 regarding Commencement*, Marist College (Apr. 2, 2020), https://www.marist.edu/-/commencement-message-to-class-of-2020-4-2-2020 (captured Aug. 6, 2020).

42.     Marist did not hold any in-person classes for undergraduate students between March 13, 2020 and the end of Spring 2020 term. All Spring 2020 classes after March 13, 2020 were only offered in a remote, online format with no in-person instruction or interaction.

43.     When Marist made the decision to close campus and move to online learning only, it acknowledged that these decisions would adversely impact students' educational experience. As Marist's president stated, "[t]he Marist community thrives on personal interaction, engagement, friendships, and mutual support, and those are made more challenging by these decisions."[29]

44.     Marist provided refunds for residence hall rooms, student meal plans, and activities fees, prorated for 46.2% of the Spring 2020 semester that Marist estimated that students were deprived of services. However, Marist never provided reimbursement or refund information regarding tuition.[30]

**B.     Students Experienced Significant Losses, in Many Cases of Borrowed Funds as a Result of Marist's Conduct.**

45.     At Marist, the median federal loan debt among borrowers who completed their undergraduate degree is $25,000.[31] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for federal student loan borrowers who graduated from Marist is $265.[32] In addition, 20% of graduating students at Marist took out private loans.[33] Students with private loans had an average of $58,204 in private loan debt at graduation.[34]

---

[29] *Coronavirus message, supra* note 28.
[30] *President Murray's Message Regarding Spring Semester Refunds/Credits*, Marist College (Apr. 17, 2020), https://web.archive.org/web/20201001132405/https://www.marist.edu/-/spring-semester-refunds-credits-4-17-2020 (captured Oct. 1, 2020).
[31] *Marist College Tuition & Financial Aid*, U.S. News, https://www.usnews.com/best-colleges/marist-college-2765/paying (last visited Oct. 16, 2023).
[32] *Id.*
[33] *Id.*
[34] *Id.*

46.     With the campus shut down for half of the semester, Plaintiff and the proposed Class have been deprived of the benefits of the on-campus educational experience as set forth above. Nevertheless, Marist has refused to refund any portion of tuition despite not providing the on-campus educational experience for which students paid.

47.     Students attending Marist's Spring 2020 semester did not choose to attend an online institution of higher learning, or enroll in one of Marist's fully-online degree programs, but instead chose to enroll in Marist's in-person, on campus educational program.

48.     During the online portion of the Spring 2020 semester, Marist principally used programs by which previously recorded lectures were posted online for students to view on their own, or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction between students and professors and among students that is instrumental in interpersonal skill development.

49.     The online formats used by Marist did not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

50.     Students were deprived of the opportunity for hands-on, collaborative learning and in-person dialogue, feedback, and critique.

51.     Access to facilities such as libraries, laboratories, computer labs, and study rooms, integral to a university education, and access to the myriad activities offered by campus life that foster social development, leadership, wellness, independence, and networking for future careers, are all substantial and materials parts of the basis upon which Marist can charge the tuition it charges. Contrary to Marist's promises, these services and facilities were not provided.

52.     Marist has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the Spring 2020 semester for the period it moved to online distance learning.

53.     Plaintiff and the Class are therefore entitled to a pro-rated refund of the tuition they paid Marist for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All Marist University students who satisfied their payment obligations for the Spring Semester 2020 tuition and who were enrolled in at least one in-person on-campus class (the "Class").

55.     Specifically excluded from the Class are all students who received full Marist-funded scholarships for the Spring 2020 semester, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

56.     Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definition.

57.     **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, Marist reported several thousand students enrolled for the 2019-2020 school year. The names and addresses of all such students are known to Marist and can be identified through Marist's records. Class members may

be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

58.     **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

a.      Whether Marist accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational experience, as well as provide access to facilities and services throughout the Spring 2020 semester;

b.      Whether Marist breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience after mid-March 2020;

c.      Whether Marist was unjustly enriched by retaining a portion of the tuition during the period of time Marist was closed during the Spring 2020 semester, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access to the services and facilities for which tuition was paid;

d.      Whether Marist intentionally interfered with the rights of the Plaintiff and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services while retaining the tuition paid by Plaintiff and the Class; and

e.      The amount of damages and other relief to be awarded to Plaintiff and the Class members.

59.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus educational experience for the tuition they paid, an experience that Marist stopped providing for the remainder for the Spring 2020 semester.

60.     **Adequacy of Representation:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members whom she seeks to represent. Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

61.     **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

62.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Marist, making it impracticable for Class members to individually seek redress for Marist's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a

potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

63.   **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendant's books and records.

**FIRST CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

64.   Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

65.   Plaintiff brings this claim individually and on behalf of the members of the Class.

66.   When Plaintiff and Class members paid Marist tuition for the Spring 2020 semester, Marist agreed to, among other things, provide an in-person and on-campus educational experience as well as access to campus services and facilities throughout the entire Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into binding implied contracts with Marist.

67.   When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Marist would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins, as well as Marist's history and prior course of providing in-person and on-campus education.

68.     Plaintiff and Class members fully performed their obligations under their implied contracts with Marist by registering for classes and paying tuition and associated fees.

69.     Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and Marist on the other.

70.     Marist breached its contracts with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational experience as well as access to campus services and facilities throughout the Spring 2020 semester, yet has retained monies paid by Plaintiff and the Class for an on-campus and in-person educational experience and access to these services and facilities during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

71.     Plaintiff and the members of the Class have suffered damages as a direct and proximate result of Marist's breach in the amount of the pro-rated portion of the tuition they paid equal to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when Marist discontinued in-person classes and closed campus facilities.

72.     Marist should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class member.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

73.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiff and the Class do not have an enforceable contract with Marist regarding the relief requested.

75.     Plaintiff and members of the Class conferred a benefit on Marist in the form of tuition paid for the Spring 2020 semester. The payment of this tuition was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

76.     Marist knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

77.     Marist has retained the full benefit of the tuition payments made by Plaintiff and the members of the Class for the Spring 2020 semester—without providing the benefits that Plaintiff and Class members were owed.

78.     For example, Marist failed to provide Plaintiff and Class members access to many on-campus facilities and services after March 9, 2020, yet Marist assessed Plaintiff and Class members with tuition that covered the cost of upkeep and maintenance of such facilities and services.

79.     Indeed, as a result of closing campus and moving classes online, Marist saved significant sums of money in the way of reduced utility costs, reduced staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work student students, and otherwise.

80.     Upon information and belief, the costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

81.     As a result of Marist's retention of all the tuition paid by Plaintiff and members of the Class during the period of time Marist was closed, Plaintiff and members of the Class were denied an in-person and on-campus educational experience and access to campus services and facilities. This was unjust and inequitable under the circumstances.

82.     Allowing Marist to retain the full benefit of tuition paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by Marist, unjustly enriched Defendant.

83.     Accordingly, Marist has been unjustly enriched and should return the prorated portion of the tuition that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the remainder of the Spring 2020 semester when Marist discontinued in-person classes and closed campus facilities.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order of restitution and all other forms of equitable monetary relief;

(e)     Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f)     Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)     Awarding such other and further relief as may be just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

A jury trial is demanded on all claims so triable.

Dated:  October 17, 2023

Respectfully submitted,

*/s/ Gary F. Lynch*

Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

*Counsel for Plaintiff and Proposed Class*